Asher v. Sutton.

H. B. ASHER, *et al.*, v. MARY SUTTON.

BANK SAFE—*No Power to Sell.* Neither the president nor cashier of a bank organized under the laws of the state, has the power, *virtute officii*, to sell the safe of the bank for a debt of the bank.

*Error from Douglas District Court.*

ACTION commenced February 23, 1880, by *Mary Sutton*, formerly Mary Butt, against *H. B. Asher* and *William Asher*, for the wrongful conversion of a safe. Trial January 11, 1881, by the court, a jury being waived. At the request of the parties, the court made the following findings of fact:

"1. That the Exchange bank, of Lawrence, Kansas, was a corporation, duly organized and existing under and by virtue of the laws of the state of Kansas, and doing business in the city of Lawrence; that said bank was the owner and in the possession of one Hall's burglar-proof safe; that said safe was used in the conduct of the business of said bank for the safe-keeping of its money and valuables; that said safe was worth the sum of one hundred and fifty dollars; that said bank became insolvent and ceased to do business on or about the 8th day of July, 1878; that at said time John W. McMillan was the president, and Chas. F. Haley, sr., was the cashier of said bank.

"2. Said Exchange bank was, at the time of its said failure, to wit, on or about the 8th day of July, 1878, indebted to Mary Sutton in the sum of about $300. Said J. W. McMillan, as president, and Chas. F. Haley, sr., as cashier, on or about the 11th day of October, 1878, executed and delivered to the said Mary Sutton a bill of sale of said safe, and attached thereto the corporate seal of said bank, and sold said safe to said Mary Sutton in payment of said indebtedness of $300, which said bill of sale is in words and figures as follows, to wit:

'LAWRENCE, KANSAS, October 11, 1878.—For value received, the Exchange bank of Lawrence hereby sells, transfers and assigns unto one Mary Butt, one burglar-proof Hall's safe, now in the vault of the building formerly occupied by the Exchange bank, with the full right to enter said building and remove said safe from said vault and building at any time when desired, hereby giving to said Mary Butt possession of said safe;

and said bank hereby warrants the title thereto to be free and unincumbered.

'In witness whereof, said Exchange bank has caused this bill of sale to be signed by its president and cashier, and the seal of said bank to be hereto affixed, on the day and date first above named.

(Signed)     J. W. McMILLAN, *President Exchange Bank.*

[Seal.]     CHAS. F. HALEY, *Cashier.*

Lawrence, Douglas County, Kansas.'

"Said bill of sale was duly filed for record in the office of the register of deeds of Douglas county, on the 12th day of December, 1878, at page 90 of book of chattel mortgages. Said safe remained in the vault of said bank until the 10th day of February, 1880, when the defendant, H. B. Asher, as sheriff of said county, levied on said safe by virtue of an execution duly issued to him out of the clerk's office of the district court of Douglas county, on a certain judgment previously and duly recorded against said Exchange bank by one Edward Jones, a depositor therein. Said judgment was in full force and effect, unreversed, undischarged, and unsatisfied. Said safe was duly and legally sold by said sheriff under said execution.

"3. Said John W. McMillan as president, and Charles F. Haley, sr., as cashier of said bank, had never been authorized or directed by the board of directors of said bank to make said sale, or execute or deliver said bill of sale, or attach the corporate seal of said bank thereto, and that there had been no meeting of said board of directors for six months prior to the making of said bill of sale; but said McMillan and Haley had always conducted the business of the bank. Before the bringing of said suit, plaintiff demanded said safe from said defendants, and said defendants refused to give up said safe. Plaintiff's name was Mary Butt, on the said 10th day of October, 1878."

And thereon the court made the following conclusions of law:

"1. That said bill of sale conveyed all the right, title and interest of said bank in and to said safe to the plaintiff, and that she is the owner of same, and that the defendants unlawfully converted the property to their own use when they levied upon said safe, and that the said property was at the time of its conversion worth $150.

"2. That said plaintiff do have and recover of and from said defendants the sum of one hundred and fifty dollars,

with interest from the tenth day of February, 1880, and her costs herein, taxed at $——.''

Judgment having been entered thereon, the defendants bring the case here.

*Harris & Harris,* for plaintiffs in error.

*George J. Barker,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The contention is, that neither the president nor the cashier of a bank organized under the laws of the state has the power, *virtute officii,* to sell the safe for a debt of the bank, and therefore that the bill of sale executed October 11th, 1878, by the president and cashier of the Exchange bank of Lawrence, did not transfer the safe of the bank, or any right, title, or interest therein, to the plaintiff below. This position is well taken. Sec. 129, ch. 23, Comp. Laws of 1879, reads:

"The affairs and business of any such association [bank] shall be managed and controlled by a board of directors, not less than five nor more than nine in number, from whom there shall be designated by themselves a president and a secretary, who shall hold their offices for one year, and until their successors are elected and duly qualified. Said board of directors shall designate who shall act as cashier, and said board of directors may appoint and remove such cashier."

This court, in the case of *National Bank v. Drake,* 29 Kas. 325, said:

"The directors constitute the governing body of the bank; the bank itself being an incorporeal entity, without power to see or know. The directory constitutes the visible representative, the thinking, knowing head of the bank."

Morse on Banks and Banking, 107, thus states the rule:

"The general control and government of all the affairs and transactions of the bank rest with the board of directors. For such purposes the board constitutes the corporation, and uniform usage imposes upon them the general superintendence and active management of the corporate concerns."

Of course what the president and cashier do, by the action of the directors, is binding upon the bank. In the usual division of duties, to the president it belongs to represent the bank in its collateral business relations. The cashier is the executive of the financial department of the bank, and whatever is to be done, either to receive or pass away the funds of the bank for banking purposes, is done by him or under his direction; he therefore directs and represents the bank in the reception and emission of money for banking objects. (*United States v. Bank*, 21 How. 356; *Merchants' Bank v. State Bank*, 10 Wall. 604; *Com. Bank v. Norton*, 1 Hill, 501.) But neither the president nor the cashier can impose by his own action, on the bank, any liability not already imposed by law or usage; nor can they bind the bank, in the absence of authority from the directors, by any agreements or contracts outside of the range of their duties. (*Bank v. Dunn*, 6 Pet. 51.)

We suppose that any contract formally executed by the president and cashier of the bank, under the corporate seal of the bank, bears upon its face the presumption that it was executed by authority of the directors, who are in law the governing body of the bank; but this presumption may be repelled by evidence, and the contract avoided by proof that the president and cashier had never been authorized or directed by the board of directors of the bank to consent to the contract, or execute it.

In this case the finding of the court is, that the president and cashier made and executed the bill of sale without any authority or direction from the directors. The mere fact that they had conducted the business of the bank gave them no authority to make the sale. As these officers had no power to execute the bill of sale, and as it is not claimed that the directors ever ratified their act, the plaintiff below was not the owner of the safe at the commencement of her action. (*Bank v. Dunn*, 6 Pet., *supra; Bank of Metropolis v. Jones*, 8 Pet. 16, 17; *Adriance v. Roome*, 52 Barb. 399; *Walworth County Bank v. Farmers' Loan & Trust Co.*, 14 Wis. 325;

19—31 KAS.

*Chicago & N. W. Rld. v. James,* 22 id. 194; *Blood v. Marcuse,* 38 Cal. 590; Angell & Ames on Corp., § 298, pp. 322 and 323.)

The judgment of the district court must be reversed, and the cause remanded with direction to enter judgment upon the findings of fact for the plaintiffs in error.

All the Justices concurring.