HARRINGTON, Respondent, v. KEMPTON, Appellant.

(222 N. W. 498.)

(File No. 5534. Opinion filed December 20, 1928.)

*W. M. Potts,* of Mobridge, and *C. E. Sutcliffe,* of McIntosh, for Appellant.

*Julius Skaug,* of Mobridge, for Respondent.

BROWN, J.   Plaintiff and her husband, W. P. Harrington, were associated in ownership of a stock of merchandise and the building and lots containing the same, in the town of Keldron.   On September 3, 1917, they sold this property to S. S. Kempton for $4,865.77 to be paid as follows:   $200 in cash, $500 October 6, 1917, and the balance in a series of notes of $100 each (except the last, which was for $165) maturing on the first day of every month beginning November 1, 1917.   The contract was in writing, and purported to be between W. P. Harrington and S. S. Kempton, and was signed by them only, but plaintiff, who was a notary public, took the acknowledgment of the parties thereto, and was familiar with all details of the contract at the time of its execution. The $200 cash payment was paid to W. P. Harrington; the $500 note and the first nine of the $100 notes were payable to his order and were paid to him; the balance of the notes were payable to plaintiff; and all of these were paid except sixteen, and for the $1,665 due on the last sixteen notes, with interest, this action is brought.

After the sale of the Keldron property, the Harringtons went to Ree, N. D., where W. P. Harrington appears to have gone into partnership in a mercantile business with W. W. Kempton, a son of defendant.   While this relation existed, W. W. Kempton was called into military service, and on September 28, 1918, he and W. P. Harrington executed an agreement in writing, whereby Harrington took over Kempton's interest, and as payment therefor agreed that, if Kempton returned within two years, he would give

him an interest in the business of the value of $2,000, and, if Kempton did not return to the business within two years, Harrington would immediately cancel $1,500 worth of notes of S. S. Kempton, "which W. P. Harrington has in his possession." This agreement was witnessed by plaintiff and S. S. Kempton, and plaintiff was cognizant of its provisions at the time of its execution, and either she or her husband received a copy thereof which she had in her possession at the trial of this case. W. W. Kempton never returned.

To a complaint alleging the execution of the sixteen notes, that plaintiff was still owner of them, and that no part thereof had been paid except some small items of interest, defendant's answer was, in substance, payment, and a counterclaim alleging that no deed for the real property had been tendered, and demanded that the notes sued on be canceled and surrendered to him. When the case was called for trial, plaintiff served a reply denying generally the allegations of the counterclaim, and alleging that a deed was ready for delivery upon payment of such judgment as might be recovered by plaintiff in the action.

In his opening statement to the jury, defendant's counsel was proceeding to state that payment had been effected through the taking over by the Harringtons of W. W. Kempton's interest in the merchandise at Ree, and defendant giving a check for the excess above $1,500, when plaintiff's counsel objected to any statement in regard to that matter because not specially pleaded, and the objection was sustained. Defendant's counsel also stated that the evidence would show that W. P. Harrington conducted all of the business transactions on behalf of plaintiff, that he had collected all of the notes payable to her order taken for the Keldron property, and that, representing both himself and plaintiff, he had made a final settlement with defendant in which it was agreed that the balance was $288, and that this amount was paid.

When plaintiff rested, defendant moved for a directed verdict on grounds which it is unnecessary to set out, which motion was denied, whereupon defendant's counsel stated to the court that, in view of the ruling on objections to his opening statement, defendant desired leave, upon whatever terms the court might choose to impose, to amend his answer so as to set out the facts in connection with the disposition of W. W. Kempton's interest in the

business at Ree and the agreement in the contract therefor, that, if he did not return, $1,500 worth of the notes taken for the Keldron property would be canceled and surrendered to defendant, and that thereby $1,500 of the notes sued on had been paid. On plaintiff's objection the application to amend was denied, the court remarking, "It would be an idle act, Mr. Potts, because I would deny it and it would be an idle act, of course."

Defendant endeavored by numerous questions and in a variety of ways to introduce evidence tending to show that the contract between W. W. Kempton and W. P. Harrington for the transfer of Kempton's interest in the business at Ree was made on behalf of plaintiff, as well as her husband; that she had an interest in the business at Ree; that she knew the terms of this agreement; and that the interest of W. W. Kempton was received by her and her husband as payment of $1,500 worth of the notes sued on. All evidence of this character was excluded on objection of plaintiff. Defendant then offered to show by the testimony of plaintiff, who was on the witness stand, and also by the testimony of S. S. Kempton, that the interest of W. W. Kempton in the business at Ree was received by her and her husband both, and was accepted by both as payment of $1,500 on the notes which were the subject of suit; that W. W. Kempton did not return; and that fifteen of the notes, amounting to $1,500, together with interest thereon, were paid by the transfer of Kempton's interest. This offer was denied, and a verdict directed for the amount of the notes.

Having denied leave to amend the answer, the court's rulings on objections to evidence and on the offers of proof were correct. Payment is the performance of an obligation for the delivery of money only (Rev. Code, § 756), and an agreement to accept property or something else than money in satisfaction of an obligation for the delivery of money must be specially pleaded (30 Cyc. 1261).

The question decisive of the appeal, then, is whether the court abused its discretion in denying defendant's request for leave to amend the answer, and we think this question must be answered in the affirmative.

Plaintiff's testimony showed that she knew all about what notes, taken for the Keldron property, had been paid in cash; that she knew the terms of the contract for the acquisition of W. W.

Kempton's interest in the stock of merchandise at Ree, and she therefore must have known that the only payment on which defendant was relying under the answer was the agreement to cancel $1,500 of the notes if W. W. Kempton did not return within two years. Besides, correspondence by both herself and her husband with defendant prior to the commencement of the action, showed that defendant was contending for this payment, and she and her husband were refusing to acquiesce in it, apparently because the business at Ree had proved unprofitable after W. W. Kempton's departure. There could therefore be no surprise on the part of plaintiff at the character of the proposed amendment, and we do not see how there could have been any necessity for the postponement of the trial, because she and her husband and defendant were the only witnesses who, it is claimed, knew anything about the transaction in which W. W. Kempton's interest in the merchandise at Ree was acquired, with the exception of W. W. Kempton, and plaintiff made no claim that she desired to use his testimony. But, in any event, defendant offered, if necessary, to consent to a postponement until the next term and to comply with whatever terms the court might fix as a condition to allowing the amendment. It is not quite clear what the court had in mind in saying that it would be an idle act to allow the amendment, unless it might be that he thought because plaintiff was not, by its terms, a party to the written contract, she could not be bound by the agreement therein to cancel $1,500 of the notes of S. S. Kempton. But it is to be observed that defendant offered to show that plaintiff was cognizant of all the terms of this contract at the time it was made, and she herself testified that she had an interest in all the business and property with her husband, and the contract with W. W. Kempton provided that the $1,500 worth of notes which were to be canceled were notes "which W. P. Harrington has in his possession." Now all of the notes which were payable to W. P. Harrington had, at this time, been paid, so that the only notes arising from the transaction which W. P. Harrington could have had in his possession were notes payable to plaintiff, and she could not, in equity, be permitted to take over, in conjunction with her husband, the property of W. W. Kempton on an agreement that notes which were payable to her should be canceled and surrendered as the consideration therefor, and, after getting the property, repudiate the

agreement for the consideration on the ground that she was not nominally a party to it. We think that, in furtherance of justice, the amendment should have been allowed. The situation is quite similar to that in Symms-Powers Co. v. Kennedy, 33 S. D. 355, 146 N. W. 570, wherein it was held an abuse of discretion for trial court to refuse permission to amend an answer.

The judgment and order appealed from are reversed, and the cause remanded for further proceedings in harmony with this opinion.

BURCH, P. J., and POLLEY, SHERWOOD, and CAMP-BELL, JJ., concur.